**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **LISA CAMERON,**<br><br>　　　　　**Plaintiff,**<br><br>　　v.<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of the Social**<br>**Security Administration,**<br><br>　　　　　**Defendant.** | Case No. EDCV 09-00829 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed her SSI benefits application on April 26, 2006. She alleged that she had been disabled since April 15, 2006 due to back and knee problems, neck and back pain, migraines, endometriosis, and hip problems. [JS 2; Administrative Record ("AR") 76-82, 89-93]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled. [AR 9-16]. The ALJ found that plaintiff had the following impairments that were severe in combination: osteoarthritis of the knees with history of surgeries, lumbar degenerative disc

disease, plantar fasciitis, heel spurs, and obesity. [AR 11]. The ALJ determined, however, that plaintiff retained the residual functional capacity ("RFC") to perform light work with only occasional postural activities, no extreme cold, and no exposure to unprotected heights or dangerous machinery. [AR 13]. The ALJ concluded that plaintiff was not disabled because her RFC did not preclude her from performing her past relevant work as a telemarketer.[1] [JS 2; AR 12-15].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating psychologist**

---

[1] Plaintiff filed a prior application for benefits in May 2004. That application was denied initially and on reconsideration. During the administrative hearing on that application on February 16, 2006, she withdrew her request for hearing "due to substantial gainful activity," and the ALJ issued an order dismissing her hearing request. [AR 80-90]. The unappealed denial of plaintiff's prior application for benefits bars plaintiff's claim for benefits through December 9, 2004, the date of the reconsidered, and final, determination on that application. [AR 85]. See 20 C.F.R. §§ 404.905, 404.921, 416.1405, 416.1421 (stating that the Commissioner's initial and reconsideration determinations are binding unless appealed or revised); 20 C.F.R. §§ 404.957, 416.1457 (standards for dismissal of hearing requests); see also Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) (holding that res judicata barred reconsideration of claim for period with respect to which a final determination had already been made).

1    Plaintiff contends that: (1) the ALJ erred in disregarding the opinion of her treating psychologist,
2 C.R. Shipley, Ph.D.; and (2) based on Dr. Shipley's opinion, the ALJ erred in finding no severe mental
3 impairment. [See JS 3-8].

4    Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide
5 clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted
6 by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate
7 reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359
8 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001); Lester v.
9 Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

10   Dr. Shipley completed a mental disorder questionnaire form in November 2004 stating that plaintiff
11 had diagnoses of major depressive disorder and generalized anxiety disorder. [AR 196-200]. He noted that
12 he had seen plaintiff twice a month between January 2003 and September 2004.  The record also contained
13 Dr. Shipley's progress notes. [AR 201-210].  Dr. Shipley opined that plaintiff had depressive symptoms
14 associated with chronic pain, including sleep disturbances and problems with attention and concentration.
15 Dr. Shipley said that plaintiff did not have a thought disorder, could follow simple instructions, and was able
16 to perform activities of daily living. He opined that plaintiff's prognosis was "poor." [AR 198-200].

17   The ALJ found that plaintiff had no severe mental impairment.  The ALJ did not mention, or give
18 reasons for rejecting, Dr. Shipley's opinion.  The ALJ remarked that there were no mental health treatment
19 notes corroborating plaintiff's complaints of anxiety and depression.. The ALJ relied on the consultative
20 psychiatric evaluation performed by Linda Smith, M.D., who diagnosed anxiety order not otherwise
21 specified ("NOS") and depressive disorder NOS. [AR 347-352]. Dr. Smith concluded that plaintiff was not
22 impaired or was at most mildly impaired in her mental work-related functional abilities. [AR 351-352].

23   The ALJ did not err in failing to give reasons for rejecting Dr. Shipley's opinion. Plaintiff's last visit
24 to Dr. Shipley was on September 7, 2004. [AR 200-201].   Plaintiff's mental condition did not prevent her
25 from working while she was under Dr. Shipley's care or at any time prior to April 2006.  Specifically,
26 plaintiff was paid by a government agency to work four hours a day, seven days a week, as an in-home
27 caregiver for her disabled son from November 1996 or 1997 until April 2006. [See AR 94-95,102, 143-144].
28   Plaintiff asked to withdrew her request for a hearing on her prior benefits application in February

2006 because she was performing substantial gainful activity (and therefore was not disabled). The ALJ dismissed the hearing request, resulting in a final, binding determination that plaintiff was not disabled through December 9, 2004, the reconsideration denial date. [See AR 80-90]. Thus, plaintiff was adjudicated "not disabled" after the period she saw Dr. Shipley for mental health treatment. When plaintiff filed her present application, she alleged that she became disabled on April 15, 2006, the date she stopped working as an in-home caregiver. [AR 76]. About eighteen months had elapsed since she stopped seeing Dr. Shipley and had been found "not disabled." The record contains no evidence that plaintiff sought further mental health treatment during that eighteen-month period or after her alleged onset of disability in April 2006.

Dr. Shipley's November 2004 opinion predated the December 2004 finding of nondisability, mooting its relevance to the present application. Furthermore, plaintiff continued to work notwithstanding the limitations assessed by Dr. Shipley. Accordingly, there was no error in the ALJ's failure to discuss Dr. Shipley's opinion. Dr. Smith's consultative opinion constitutes substantial evidence supporting the ALJ's finding that plaintiff did not have a severe mental impairment. Therefore, plaintiff's contentions lack merit.

**Lay witness's statements**

Plaintiff contends that the ALJ articulated legally insufficient reasons for rejecting statements made by lay witness Carine Douge, plaintiff's friend and neighbor, in disability reports. [JS 8-11].

Ms. Douge said that she had known plaintiff for 13 years and spent six to eight hours a day helping plaintiff care for herself and her disabled son. She said that plaintiff needed help ambulating, caring for her personal hygiene, caring for her children, and performing activities of daily living due to constant back, knee, and leg pain and swelling. Ms. Douge said that she helped take care of plaintiff and her disabled son on a daily basis, and that plaintiff's daughters, brother, and boyfriend also helped. Ms. Douge said that plaintiff used a cane prescribed by her doctor to help get around. Ms. Douge said that plaintiff was often sleepy, got mad easily, cried and "screamed" a lot due to pain and frustration, and had difficulty remembering and paying attention because of her pain and medications. [AR 114-122, 151-159, 184-191].

While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)(quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)). Germane reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the

4

medical evidence, inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008; Greger, 464 F.3d at 971; Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ rejected Ms. Douge's statements because her description of plaintiff's limitations was "inconsistent with [plaintiff's] activities." [AR 15]. Plaintiff testified that her activities included taking care of her disabled son, with help from her brother, children, and neighbor; helping her children with homework; reading; watching television; playing online games; sitting outside; sometimes going to the movies and dinner; visiting with friends and relatives; caring for her personal hygiene; occasionally driving; shopping with help from her boyfriend or her oldest daughter; some cooking; straightening up her room; doing a little bit of laundry; paying bills online; and managing her finances. [AR 14, 44-48, 160-170]. Plaintiff's testimony indicated that she was not as functionally limited and dependent on others as Ms. Douge suggested. For example, Ms. Douge said that plaintiff needed help bathing, dressing, caring for her hair, and using the toilet; used a cane to get from room to room; and could not pay bills or handle her finances. [AR 116, 118, 121, 153, 155]. Plaintiff said that she could do those things herself, except for "sometimes" needing help to put her shoes on or brush her hair. [AR 124, 162, 165]. Plaintiff said that she used a cane "[m]ost of the time when I'm out," but that she did not need it at home. She also reported that the cane was not prescribed by a physician. [AR 51, 129, 168]. In addition, the consultative orthopedic examiner stated that plaintiff used no assistive device to ambulate and had no significant physical functional impairments. [AR 287, 289].

The ALJ provided a germane reason for rejecting Ms. Douge's statements, and therefore he did not commit legal error.

**Plaintiff's subjective testimony**

Plaintiff contends that the ALJ provided legally insufficient reasons for rejecting the alleged severity of her subjective complaints, specifically including her complaints about side effects from her medications.. [JS 11-19].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all

subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear, and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle, 533 F.3d at 1160-1161; Moisa, 367 F.3d at 885. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

The ALJ provided specific, convincing reasons, supported by substantial evidence, for rejecting plaintiff's complaints of disabling back, neck, knee, and hip pain, swelling, and stiffness. First, the objective

medical evidence did not corroborate the degree of pain and functional limitation alleged. [AR 14]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ noted that plaintiff underwent knee surgery in 1984 and had undergone no recent treatment other than taking pain medication. [AR 14, 404]. Plaintiff's 2003 and 2008 lumbar spine MRIs showed moderate disc disease at L5-S1, and mild spinal canal stenosis. X-rays of her feet, however, revealed no significant abnormalities. [AR 14, 400-401, 413-414, 430]. On orthopedic examination, plaintiff had essentially normal clinical findings. [See AR 14, 285-290]. Dr. Sophon, the consultative board-certified orthopedist, concluded that plaintiff "does not have significant physical impairment and there are no functional limitations." [AR 14, 285-289].

Second, the ALJ concluded that plaintiff's testimony about her daily activities, which was summarized above, was inconsistent with her allegations of disabling limitations and side effects. [AR 14]. Plaintiff's daily activities, standing alone, are not sufficient to discredit her subjective allegations, but they were one factor that the ALJ could consider. See Burch, 400 F.3d at 681 (stating that the ALJ "was permitted to consider daily living activities in his credibility analysis" and did not err in concluding that the claimant's daily activities "suggest that she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and her boyfriend. She is able to manage her own finances and those of her nephew.").

Third, plaintiff testified that she needed knee braces and used a cane "most of the time" when she went out, but Dr. Sophon, the consultative orthopedist, observed that she ambulated without assistance. The psychiatric examiner also made no comment about use of an assistive device. [AR 14, 287, 347-352]. Plaintiff testified during the hearing that she wore knee braces due to knee injuries suffered in a car accident when she was twelve, but she worked for years as a caregiver for her son despite her knee problems. [AR 51].

Fourth, the record contained "inconsistent accounts regarding the extent of" plaintiff's ability to care for her son, who was disabled by muscular dystrophy. [AR 14, 384, 404]. Plaintiff inconsistently reported that she stopped working as a caregiver for her son in January 2006 or April 2006. [AR 14, 93-94, 101, 286, 349]. She told her doctor in September 2006 that she was taking care of her son and that this involved lifting. [AR 14, 384]. In March 2008, she told her doctor she needed to lift her son. [AR 14, 404]. The ALJ

noted that when plaintiff worked as a caregiver for her son, she had to lift over 100 pounds when moving him from his bed to his wheelchair, but she nonetheless filed applications for disability benefits during that period, undermining her overall credibility. See Thomas, 278 F.3d at 958-959 (stating that an ALJ may consider inconsistencies in a claimant's testimony, or inconsistencies between a claimant's testimony and conduct, and that the ALJ permissibly rejected the claimant's testimony in part based on her conflicting statements).

Fifth, the ALJ relied on the conclusions of the orthopedic and psychiatric consultative examiners, who considered plaintiff's subjective complaints and clinical presentation. Those physicians concluded that plaintiff did not have significant physical or mental functional limitations. [See 285-289, 347-352]. See Light, 119 F.3d at 792 (stating that an ALJ may consider information from physicians concerning the nature, severity, and effect of a claimant's subjective symptoms).

Sixth, the ALJ adequately took into account plaintiff's subjective complaints that her medication made her sleepy. The type, dosage, and side effects of medication are factors the ALJ should consider in evaluating subjective symptom allegations. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ reasonably concluded that plaintiff's complaints of disabling side effects were not credible for the reasons described above, such as a lack of evidence that she reported severe side effects to her physicians. [See AR 14]. However, the ALJ made allowance for some degree of drowsiness in his RFC finding by precluding plaintiff from work involving "hazards such as unprotected heights and dangerous machinery." [AR 13].

The ALJ articulated legally adequate reasons for his credibility findings. Therefore, plaintiff's contentions lack merit.

**Hypothetical question**

Plaintiff contends that the ALJ's hypothetical question to the vocational expert was defective because it did not reflect Dr. Shipley's findings or plaintiff's subjective complaints of sleepiness from her medications. [JS 19-20].

Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of the claimant that are supported by substantial evidence in the record. Robbins, 466 F.3d at 886; Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

For the reasons described above, the ALJ properly weighed the evidence, and his RFC finding is

supported by the record. Therefore, the ALJ's hypothetical question accurately described the limitations and restrictions that were supported by the record.

### Conclusion

The Commissioner's decision is supported by substantial evidence and is free of legal error. Therefore, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

September 15, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge